FENNEMORE CRAIG, P.C.
Ronald Stolkin (No. 002552)
Alec Hillbo (No. 020185)
3003 North Central Avenue
Suite 2600
Phoenix, AZ  85012-2913
Telephone:  (602) 916-5000
Email:  rstolkin@fclaw.com
Email:  ahillbo@fclaw.com

Attorneys for Respondent
Federal Express Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>            Applicant,<br><br>            v.<br><br>Federal Express Corporation,<br><br>            Respondent. | CV06-00276-TUC-RCC<br><br>**FEDEX'S OPPOSITION TO THE EEOC'S APPLICATION FOR AN ORDER TO SHOW CAUSE** |

      The law that is dispositive of this subpoena enforcement matter is straightforward: the Equal Employment Opportunity Commission ("EEOC") may not continue an administrative investigation based upon an individual's charge once that charging party has been issued a right to sue letter and has initiated litigation based upon that charge.

      In spite of this established law, the EEOC seeks to enforce against Federal Express Corporation ("FedEx") an administrative subpoena that it issued <u>after</u> it issued its right to sue letter and <u>after</u> the charging party sought to enforce his rights in a class action lawsuit. This Court should not sanction such an unauthorized and unlawful tactic. Respondent requests that the Court deny the relief sought by the EEOC.

1

## I.      BACKGROUND

2       On November 27, 2004, Tyrone Merritt ("Merritt") filed a charge of discrimination

3  with the EEOC in Phoenix against FedEx alleging that it denied him job promotions

4  because of his race.  (Exhibit 1)  The first charge alleged that Merritt took and failed a

5  basic skills test.   Merritt contended that FedEx's basic skills test and its discipline

6  discriminated against African-Americans and Latinos.  On June 29, 2005, Merritt filed a

7  supplemental charge of discrimination with the EEOC alleging a failure to promote

8  because of race. (Exhibit 2)  In the supplemental charge, Merritt contended that he had

9  again failed the basic skills test and FedEx passed him over for promotions.

10      On October 20, 2005, the EEOC issued a right to sue notice to Merritt following

11 his request that it do so.  (Exhibit 3)  On October 12, 2005 (and again on October 26,

12 2005), Merritt formally joined a class action lawsuit as a representative plaintiff that was

13 pending in the United States District Court for the Northern District of California.

14 (Exhibit 4) (C 03-2659 SI; C 03-2878 SI).

15      On January 17, 2006, following Merritt's joinder in the litigation in California,

16 FedEx issued a Freedom of Information Act request to the EEOC regarding Merritt's

17 charge.  (Exhibit 5)  Although Merritt had joined the California litigation, the EEOC

18 denied FedEx's FOIA request on February 22, 2006 on the basis that the charge was still

19 open.  (Exhibit 6)

20      Four months after Merritt had joined the California lawsuit, on February 10, 2006,

21 the EEOC issued subpoena PHX-06-18 to FedEx relating to the Merritt charges of

22 discrimination and requested a plethora of information regarding every personnel record

23 FedEx has or can maintain.[1]  On February 17, 2006, FedEx submitted its timely petition to

24 revoke or modify the subpoena, which the EEOC denied.

25

26 [1] The EEOC issued this subpoena despite FedEx's cooperation with the EEOC's request
   for information. (*See* Exhibits 7-10)

FENNEMORE CRAIG, P.C.

PHOENIX

Case 4:06-cv-00276-RCC   Document 11   Filed 07/24/06   Page 3 of 18

1  On March 9, 2006, the EEOC issued a final determination denying FedEx's

2  petition to revoke.  On March 22, 2006, FedEx requested that the EEOC reconsider its

3  denial of FedEx's petition to revoke.  In its request, FedEx reiterated the grounds for its

4  objections and cited on-point federal authority that had been ignored in this final

5  determination.   On March 29, 2006, the EEOC rejected FedEx's request for

6  reconsideration.

7  On June 1, 2006, the EEOC applied to this Court for an Order to Show Cause

8  ("OSC"), seeking to enforce the subpoena.  On July 6, 2006, this Court issued an amended

9  order requiring FedEx to appear on August 28, 2006 to show cause why the EEOC's

10  subpoena *duces tecum* should not be enforced.  FedEx was formally served with the order

11  on July 7, 2006.

12  **II.   ANALYSIS**

13  Determining whether to enforce an EEOC administrative subpoena requires a

14  three-part analysis:   (1) whether Congress has granted the authority to investigate;

15  (2) whether procedural requirements have been followed; and (3) whether the evidence is

16  relevant and material to the investigation.  *See EEOC v. Children's Hosp. Med. Ctr. of N.*

17  *California*, 719 F.2d 1426, 1428 (9th Cir. 1983), *overruled on other grounds by*

18  *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299 (9th Cir. 1994).

19  **A.   Congress Did Not Authorize Continued Authority to Investigate**
   **Following Issuance of a Right to Sue Letter.**

20

21  The threshold issue before this Court is whether the EEOC retains jurisdiction to

22  issue and enforce its administrative subpoena after it issued a right to sue notice to Merritt

23  and Merritt sought to enforce his rights in private litigation.  In spite of the fact that the

24  courts that have considered this issue have unanimously ruled against the EEOC, the

25  EEOC asks this Court to do what other courts have not: ignore the law and case

26  precedents and effectively bestow on the EEOC a power that it lacks.

FENNEMORE CRAIG, P.C.

PHOENIX

- 3 -

1          1.        Enforcement of the Subpoena Should Be Denied.

2                    a.       The EEOC's Right to Investigate Terminated.

In its Amended Memorandum in support of its application for OSC, the EEOC begins not by presenting any authority that it has the power to issue and enforce the subpoena, but rather by assaulting the reasoning of the Fifth Circuit's decision in *EEOC v. Hearst Corp.*, 103 F.3d 462 (5th Cir. 1997).  By attacking *Hearst*, it appears the EEOC hopes to deflect attention away from Title VII, which precludes the EEOC from investigating following its issuance of a right to sue letter and the institution of private litigation.

Title VII sets forth "an integrated, multistep enforcement procedure...." *Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 359 (1977).  This multistep procedure consists of four separate stages:   (1) filing and notice of charge; (2) **investigation**; (3) conference and conciliation; and (4) enforcement.  *See, e.g.*, *Occidental*, 432 U.S. at 359-60.

The EEOC's right to investigate (the second stage) is dependent upon the filing of a formal charge, either by the charging party or by a Commissioner (the first stage).  *See, e.g.*, 42 U.S.C. § 2000e-5(b), 2000e-6(e).  A proper charge "is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 65 (1984).  The Ninth Circuit affirmed the denial of an enforcement action where the charge failed to meet the § 706(b) requirements.  *See EEOC v. Dean Witter Co., Inc.*, 643 F.2d 1334, 1335 (9th Cir. 1980).

In the second stage, "Congress granted the EEOC broad investigatory authority so that the agency promptly and effectively could determine whether Title VII had been violated, and to assist the agency in its efforts to resolve disputes without formal litigation." *See Hearst*, 103 F.3d at 469.  The purpose of an investigation, however, ceases when formal litigation has commenced and, accordingly, the EEOC's power to

1  investigate also ceases. *Id.*

2       This conclusion is supported by Title VII itself, which does not allow for duplicate

3  lawsuits. *See* 42 U.S.C. § 2000e-5(f)(1); *EEOC v. Pacific Press Publ'g Ass'n*, 535 F.2d

4  1182, 1186 (9th Cir. 1976) ("The initiation of a private action in January 1973 based on

5  the charge signalled [*sic*] the failure of efforts at conciliation and terminated EEOC's

6  opportunity to bring suit under 42 U.S.C. § 2000e-5(f)(1)."); *EEOC v. Occidental Life Ins.*

7  *Co. of California,* 535 F.2d 533, 536 (9th Cir. 1976) ("Should such private action be filed,

8  the EEOC would apparently be restricted to intervention"). Thus, where a private party

9  commences a lawsuit first, the EEOC cannot sue; it can only intervene.

10       If the EEOC cannot institute a duplicate lawsuit, then it follows that the EEOC may

11  not continue to investigate where a private party has already commenced litigation. This

12  is because the purpose of investigating (*i.e.*, to administratively determine if Title VII has

13  been violated) no longer is served because the charging party has already filed a lawsuit.

14  *See, e.g., Hearst*, 103 F.3d at 470; *EEOC v. Federal Home Loan Mortg. Corp.*, 37

15  F.Supp.2d 769, 773 (E.D. Va. 1999).

16              b.    Legislative History Supports the Conclusion that EEOC
                 Jurisdiction Ends To Avoid Dual Proceedings.

17

18       The legislative history of the Equal Employment Opportunity Act of 1972[2] also

19  mandates the denial of the EEOC's request that its subpoena be enforced. The original

20  bills governing EEOC enforcement of civil rights laws contained this language:

21          The committee was concerned about the interrelationship between the
newly created cease and desist enforcement powers of the Commission and
the existing right of private action. It concluded that a duplication of

22          proceedings should be avoided. The bill, therefore, contains a provision
for termination of Commission jurisdiction once a private action has been

23          filed (except for the power of the Commission to intervene in the private

24      [2] Title VII of the Civil Rights Act of 1964 was extended to cover federal, state and local

25  public employers and educational institutions by the Equal Employment Opportunity Act
of 1972 (Public Law 92-261). This amendment to Title VII also gave the EEOC the

26  authority to file suit in federal district court against employers in the private sector on
behalf of individuals whose charges were not successfully conciliated.

1  action).

2  *See* H.R. Rep. No. 92-238 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 2137, 2148.

3  The Senate Committee expressed the same concerns:

4  The Committee is concerned, however, about the interplay between the
   newly created enforcement powers of the Commission and the existing
5  right of private action.  It concluded that duplication of proceedings should
   be avoided.   The bill therefore contains a provision for cutoff of the
6  Commission's jurisdiction once the private action has been filed-except for
   the power to intervene-as well as a cut-off of the right of private action
7  once the Commission issues a complaint....

8  *See* S. Rep. No. 92-415, at 24 (1971).  Further,

9  In any event duplication of proceedings is avoided by termination of one at
   the commencement of the other.  For example, if an individual should
10 perfect and exercise his title VII right of court action, the Commission
   would thenceforth be divested of jurisdiction over the matter...   The
11 committee concluded that this scheme would protect aggrieved persons
   from undue delay, as well as prevent respondents from being subject to
12 dual proceedings.

13 *See* 118 Cong. Rec. 2515, at 295 (1972).

14 In *EEOC v. Union Oil Co. of California*, 369 F. Supp. 579 (D. Ala. 1974), the

15 Court considered whether the EEOC's right to sue terminated when a private party filed

16 suit.  *Id.* at 584-86.  The Court analyzed the meaning of the fact that the "explicit cut-off"

17 language appearing in the Senate Committee's Report "disappeared" from the statute, the

18 Court stated:

19 This omission, however, appears to indicate not a change in intent, but
   rather a belief that the same result was accomplished through the
20 combining of Commission and private party powers in a single subsection
   with sequential suit rights and cross-rights of intervention.

21

22 *Id.* at 585.

23 Then, relying on the legislative history of the Equal Employment Opportunity Act

24 of 1972, the *Union Oil* Court concluded that a defendant could not be subjected both to

25 proceedings of the EEOC and a private lawsuit by a charging party at the same time.  *Id.*

26 at 584.  "The legislative history [of Title VII] ... manifests an unmistakable intent to avoid

1   duplicate proceedings." *Id.* at 584.

2              c.    Prior Decisions Confirm EEOC's Jurisdiction Ended.

3       "[T]he EEOC may not continue to investigate a charge once formal litigation by

4   the charging part[y] has commenced...."  *EEOC v. Hearst Corp.*, 103 F.3d 462, 469 (5th

5   Cir. 1997).   In *Hearst*, the EEOC issued two administrative subpoenas to the Hearst

6   Corporation.  *Id.* at 463.  Shortly after the issuance of the subpoenas, the EEOC issued

7   right to sue letters to two charging parties.   After Hearst informed the EEOC that it would

8   not comply with the subpoenas, the EEOC sought to enforce the subpoenas in the district

9   court.  *Id.*  at 464.  The district court entered an order enforcing the administrative

10  subpoenas.  *Id.*

11      The Court of Appeals <u>reversed</u>.[3]  In considering whether "a charge upon which

12  formal litigation has commenced can support a continuing administrative investigation"

13  *id.* at 464, the Court held that,

14      [T]he EEOC may not continue an administrative investigation based upon
        an individual's charge once the charging party has been issued a right to
15      sue letter and has initiated litigation based upon that charge.

16
    *Id.* at 463.  Once formal litigation is commenced, the EEOC no longer has jurisdiction to
17
    investigate.  *See id.  The EEOC did not appeal this decision.*
18
        In *EEOC v. Federal Home Loan Mortg. Corp.*, 37 F. Supp. 2d 769 (E.D. Va.
19
    1999), the charging party alleged unlawful discrimination on the basis of race against
20
    himself *and blacks as a class*.  *Id.* at 770 & n.2.  The Court ruled that the EEOC did not
21
    have jurisdiction to enforce its administrative subpoena once the charging party received a
22
    right to sue notice and commenced civil litigation on the underlying charge.  *The EEOC*
23

24  ──────────
    [3] In a self-serving, yet unremarkable comment, the EEOC states that "[n]o other circuit has
    adopted the ruling of *Hearst*" (Memorandum at 5, n. 4), implying that other circuits have rejected
25  the Fifth Circuit's holding.  Such an implication would not be correct.  Notably, the EEOC
    elected not to appeal the *Hearst* decision to the United States Supreme Court.  Nor did the EEOC
26  appeal its losses in *Federal Home* or *EEOC v. Home Depot* to the Fourth and/or Ninth Circuits,
    respectively.  *See, infra*, pages 7-8.

FENNEMORE CRAIG, P.C.
PHOENIX
                                        - 7 -

*did not appeal this decision.*

In *EEOC v. Home Depot, Inc.*, No. 01-CV-1771 W (JAH), (an unpublished decision from the Southern District of California) (*see* Exhibit 11), Gonzalez filed charges of discrimination against his employer, Home Depot.  Gonzalez then filed an employment discrimination lawsuit against Home Depot.  After Gonzalez filed suit, the EEOC issued a subpoena to Home Depot seeking personnel records and other information regarding Home Depot's employment practices.  Upon Home Depot's refusal to comply with the subpoena, the EEOC filed its application for an order to show cause seeking to enforce its subpoena.  The Court denied the EEOC's application, ruling that the EEOC lacked jurisdiction to enforce its administrative subpoena after issuing a right to sue notice.  Relying on *EEOC v. Hearst*, the *Home Depot* court concluded that the EEOC lacked investigative authority after Gonzalez commenced his suit.  *The EEOC did not appeal this decision.*

Notably, the EEOC made no effort to distinguish *Federal Home* and apparently has hoped that the ruling in *Home Depot* would not be discovered.  The purpose in avoiding these decisions is clear:  the EEOC cannot meaningfully distinguish those cases from the facts in this case.  Principally, "in a case where the charging party has requested and received a right to sue notice and is engaged in a civil action that is based upon the conduct alleged in the charge filed with the EEOC, that charge no longer provides a basis for EEOC investigation." *Hearst*, 103 F.3d at 469-70.

        d.      Supreme Court and Ninth Circuit Precedent Show EEOC Jurisdiction Ended.

The United States Supreme Court has described a lawsuit by a private party on that party's charge of discrimination as an "alternative enforcement procedure." *Occidental*, 432 U.S. at 361.  Thus, a private party "may elect to <u>circumvent</u> the EEOC procedures and seek relief through a private enforcement action." *Id.* (emphasis added).  The recognition

1    of an "alternative" procedure that "circumvents" the EEOC procedures manifests the

2    intent that either a private lawsuit proceeds or the EEOC investigation proceeds, not both.

3          Two times the Ninth Circuit Court of Appeals has suggested it would reach the

4    same conclusion.  First, in *EEOC v. Pacific Press Publ'g Ass'n*, 535 F.2d 1182 (9th Cir.

5    1976), the EEOC sought and obtained injunctive relief to enjoin Pacific Press from

6    discharging two employees (Silver and Tobler) who had filed charges of discrimination.

7    Silver received a right to sue notice and filed suit.  That lawsuit was later certified as a

8    class action which Tobler joined.  *Id.* at 1184.  The EEOC sought injunctive relief to

9    enjoin Pacific Press from terminating Silver's and Tobler's employment.  Reviewing the

10   statute and the legislative history, the Ninth Circuit concluded that the EEOC had no

11   authority to seek injunctive relief after a private suit commenced.  The Court reasoned that

12   continued administrative processing was not necessary where a private action resulted:

13           The original charge filed by the intervenors [Silver and Tobler] had long
14           since gone beyond the EEOC administrative phase when this action was
             commenced.   The initiation of a private action ... based on the charge
             signalled [*sic*] the failure of efforts at conciliation and terminated EEOC's
15           opportunity to bring suit....   The parties no longer looked to EEOC for
16           relief but instead shifted their attention to the court.

17   *Id.* at 1186 (citations omitted).  The *Publishing Press* Court clearly articulated that the

18   administrative process concludes at the initiation of a private lawsuit.  *Id.* at 1186-87.

19         In *EEOC v. Children's Hosp. Med. Ctr. of N. California*, 719 F.2d 1426 (9th Cir.

20   1983), the Court considered whether the EEOC had authority to investigate charges of

21   discrimination arising after the entry of a consent decree.  After deciding that the consent

22   decree did not eliminate the EEOC's authority, the court addressed the next step:  "If the

23   Commission finds the charges substantiated, it may be able to secure voluntary

24   compliance with the law by the Hospital....  *An alternative scenario is a suit by the*

25   *Commission or the charging parties.*"  *Id.* at 1430 (emphasis added).  Clearly, there are

26   two options: either the EEOC can investigate and attempt conciliation or the charging

1    party can file a lawsuit.

2                    e.      The Court Must Deny the EEOC's Request for Enforcement.

3          Merritt filed two charges of discrimination against FedEx.  The EEOC issued

4    Merritt a right to sue letter on his charges.  Merritt then joined a class action lawsuit in

5    California.  After Merritt joined the lawsuit, the EEOC sought to subpoena information

6    from FedEx.  FedEx has resisted the subpoena on the grounds, *inter alia*, that the EEOC

7    lacks jurisdiction to issue and enforce the administrative subpoena.

8          Title VII, the legislative history of the Equal Employment Opportunity Act of

9    1972, *Hearst*, *Federal Home*, and the *Home Depot* cases conclusively establish that the

10   EEOC's attempt to enforce its subpoena must fail.  The EEOC lost jurisdiction to continue

11   its investigation of Merritt's claims when it issued to him the right to sue notice and

12   Merritt joined the lawsuit as a representative plaintiff.   The EEOC's purpose for

13   investigating, therefore, no longer exists given Merritt's election to pursue his claims

14   through the class action lawsuit.

15         As explained in *Hearst*, Merritt had to choose between allowing the EEOC to

16   investigate or to proceed with his own lawsuit.  Merritt elected to pursue his rights

17   through the class action lawsuit, thereby "circumventing" the EEOC's investigation and

18   moving to enforcement.  *See Occidental,* 432 U.S. at 361.  The EEOC, therefore, no

19   longer has jurisdiction to investigate and the Court should deny the subpoena.

20         The Court should note the EEOC's inconsistent position on the FOIA request

21   relative to Merritt's Title VII lawsuit.  Sections 83.4 and 83.5 of the EEOC Compliance

22   Manual require disclosure of file information to respondents and their attorneys upon

23   request.  Specifically, the Compliance Manual states:

24         "*After suit has been filed* – Disclose information to the respondent and
           attorney if the charging party or aggrieved person has filed suit under Title
25         VII (but remove confidential information pursuant to § 83.6)."

26

1  EEOC Compliance Manual § 83.4 (emphasis in original).   The EEOC's intentional

2  withholding of the file information is entirely inconsistent with its regulations, which

3  again demonstrate that the EEOC no longer has authority to investigate following the

4  institution of a lawsuit.

5        There would be harsh results if this Court were to enforce the EEOC's subpoena.

6  First, the EEOC and the class action lawsuit will cause FedEx to be whipsawed between

7  duplicate processes, including duplicate discovery requests.   The class action has already

8  required FedEx to expend significant time and money in defending itself.   Responding to

9  the EEOC's discovery will serve to add further burden to FedEx's attorneys, human

10  resources personnel, and other employees – a result expressly prohibited by Title VII.

11  Moreover, granting the EEOC's request and allowing it to pursue a parallel course line of

12  discovery against FedEx while another enforcement action is already ongoing would be a

13  waste of not only taxpayer money but also judicial resources.

14                2.     EEOC's Arguments Are Without Merit.

15        Faced with the case law, statutory language, and legislative history discussed

16  above, the EEOC has chosen to either ignore the relevant authority or divert the Court's

17  attention to irrelevant cases.   Those attempts clearly fail.

18                       a.     If *Occidental* Applied as the EEOC Argues, There Would Be
                                No Limit on the EEOC's Right to Sue.
19

20        The EEOC argues *Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355

21  (1977) governs this case.   The EEOC is mistaken.   *Occidental* truly is distinguishable.

22        In *Occidental*, "[t]he sole question presented ... is what time limitation, if any, is

23  imposed on the EEOC's power to bring [suit against a private employer alleged to have

24  violated Title VII]."   *Id.* at 357.   *Occidental* did not address the issue presented by the

25  instant case because, in *Occidental*, **_no private party filed suit._**   432 U.S. at 357-58.

26  Furthermore, if the EEOC's interpretation of *Occidental* were correct, then there would be

1   no "limit [on] the EEOC's ability to file a lawsuit after completion of its investigation

2   resulting in a cause determination, and failed conciliation." (Memorandum at 8)  While

3   operating in a world of no restrictions or limitations might be the EEOC's preference, it is

4   not the law.

5       Further, if a private party has already filed suit, then applying *Occidental* as the

6   EEOC suggests would allow the EEOC to bring a duplicate suit – a result prohibited by

7   Title VII.  *See* 42 U.S.C. § 2000e-5(f)(1).  *See supra,* page 5 (citing cases) (The EEOC

8   can intervene in an ongoing lawsuit, but Title VII does not permit duplicate suits.)

9           b.      EEOC's Burden of Litigation Argument Is Inapplicable.

10      Relying on *General Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318 (1980), *EEOC*

11   *v. Kimberly-Clark Corp.*, 511 F.2d 1352 (6th Cir. 1975), and *EEOC v. Waffle House, Inc.*,

12   534 U.S. 279 (2002), the EEOC offers the "burden of litigation" argument to suggest it

13   has continuing jurisdiction.  (Memorandum at 8-9)

14      The cases cited by the EEOC are distinguishable from the instant case because

15   none of them involved a lawsuit already initiated by a private party.   In *General*

16   *Telephone*, 446 U.S. at 320-32, the EEOC brought suit against General Telephone

17   alleging discrimination against women employees as a class.  The Court concluded that

18   Rule 23, Federal Rule of Civil Procedure, was not applicable to an enforcement action

19   brought by the EEOC.  *General Telephone* did not address the issue of whether the EEOC

20   has jurisdiction to sue after a private party initiates a lawsuit.

21      The EEOC suggests that *Kimberly-Clark* stands for the proposition that it may

22   "process a charge after 180 days *or after a right to sue notice was issued.*" (Memorandum

23   at 8)  Contrary to the EEOC's interpretation, *Kimberly-Clark* did not hold that the EEOC

24   could continue to process a charge after a right to sue notice was issued.   In fact,

25   *Kimberly-Clark* did not address right to sue notices.  Rather, the court merely held that the

26   EEOC (1) may bring suit after 180 days, *id.* at 1356-57, and (2) retains a right of

1  permissive intervention once a private civil suit is commenced. *Id.* at 1362-63.

2  *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) also is distinguishable as it, too,

3  did not involve a lawsuit by a private party. Rather, *Waffle House* involved the effect of

4  an arbitration provision in an employment agreement on the EEOC's ability to seek

5  judicial relief in court. Importantly, *Waffle House* cited to 42 U.S.C. § 2000e-5(f)(1) for

6  the proposition that the EEOC and private parties may not engage in duplicate suits. *Id.* at

7  291.

8           c.       The EEOC's Regulations Are Not Applicable Here.

9  Next, the EEOC argues that 29 C.F.R. § 1601.28(a)(3) allows for the continued

10  processing of the case. (Memorandum at 9-10) 29 C.F.R. § 1601.28(a)(3) states:

11  Issuance of a notice of right to sue shall terminate further proceeding of
   any charge that is not a Commissioner charge unless [the EEOC
12  representative] determines at that time or at a later time that it would
   effectuate the purpose of title VII or the ADA to **further process** the
13  charge....

14  *Id.* (emphasis added).

15  29 C.F.R. § 1601.28(a)(3), however, has been held invalid. In *Martini v. Federal

16  Nat. Mortg. Ass'n*, 178 F.3d 1336 (D.C. Cir. 1999), the Court reasoned that "it [is]

17  implausible that an agency as chronically overworked as the EEOC would either begin or

18  continue to investigate charges for which it has authorized an alternative avenue for

19  relief." *Id.* at 1346. In other words, where a private party had already commenced a

20  lawsuit, there was no need for the EEOC to continue working on the case.

21  Nor does the phrase "further process the charge" suggest that the EEOC can further

22  investigate. Rather this phrase appears to contemplate administrative tasks associated

23  with the charge such as issuing a second right to sue notice. *See, e.g.*, *Robinson v. Int'l

24  Broth. of Elec. Workers Local 134,* No. 86C-6643, 1989 WL 85002, *2 (N.D. Ill. 1989)

25  (court recognized that EEOC could issue a second right to sue notice under 29 C.F.R. §

26  1601.28(a)(3) to "further process" the charge) (*See* Exhibit 12).

1   Plainly, 29 C.F.R. § 1601.28(a)(3) does not apply to this case.  First, it does not

2   permit the EEOC to "further process the charge" after the issuance of a right to sue notice

3   and a private party files suit.  Second, the facts of this case go beyond the scope of the

4   regulation because once Merritt joined the class action lawsuit, there was no further need

5   for the EEOC to investigate.  *See Hearst*, 103 F.3d at 470.  In fact, the EEOC offers no

6   plausible reason why it needs to continue to investigate Merritt's charge where his lawsuit

7   is ongoing.[4]

8               d.      The EEOC Lacks Jurisdiction to Investigate.

9       The EEOC also argues that because Merritt's charge is valid, it has jurisdiction to

10  investigate.    (Memorandum at 10-11)    While the EEOC concedes that in certain

11  circumstances it does not have jurisdiction, *e.g.*, an untimely charge or a charge against an

12  Indian tribe (Memorandum at 11), it conveniently omits that it lacks jurisdiction to

13  investigate where a private party has commenced formal litigation because "the time for

14  investigation has passed."  *Hearst*, 103 F.3d at 469

15  **B.      The EEOC Incorrectly Asserts that the Information Is Relevant.**

16      Assuming, *arguendo*, that the EEOC has the authority to issue and enforce its

17  subpoena (it does not), the subpoena is overbroad.  The subpoena states, in relevant part:

18      Please identify any computerized or machine-readable files that are or have
        been maintained by you (or any other entity under contractual or other
19      arrangement) since January 1, 2003 which contain data on personnel
        activities.    This type of file would include, but not be limited to
20      **applicants, hiring, promotions, testing, discipline, job analyses and
        evaluations, performance evaluations, demotions, employment history,**
21      **amounts of pay, adjustments to pay, work assignments, adjustments to
        work assignments, training, transfers, terminations, job status and so**
22      **forth**.

23  *(See* EEOC Attachment 5)

24      The  test  for  relevance  is  whether  the  subpoena  is  related  to  the  charge  of

_____

25  [4] The Application for an Order to Show Cause is supported by the affidavit of Deputy
    Director Susan L. Grace.  Ms. Grace's affidavit does not provide an explanation for the
26  need to further process the charge.  *(See* EEOC's Attachment 1)

1   discrimination.  42 U.S.C. § 2000e-8(a).  The EEOC is not entitled to request "evidence

2   going to forms of discrimination not even charged or alleged."  *General Ins. Co. of*

3   *America v. EEOC*, 491 F.2d 133, 136 (9th Cir. 1974).

4               1.       Demand for Descriptions of Computerized Information is Harassing.

5           At the outset, the EEOC's request for any computerized information is harassing

6   and emblematic of a "fishing expedition."   The EEOC rationalizes that it needs this

7   information to allow it to "tailor further requests in a manner that will minimize the

8   burden on FedEx." (Memorandum at 14)  The EEOC's reasoning is disingenuous.  The

9   EEOC has extensive experience in investigating cases of discrimination.    It has

10  experienced investigators and attorneys who are more than capable of constructing narrow

11  and proper demands for information from FedEx.

12          Instead, the EEOC broadly intrudes into the structure and nature of FedEx's

13  personnel files.   The means by which FedEx maintains its files is not probative of

14  discrimination.   This suggests, however, that the EEOC wants the information for

15  convenience.  Under the test announced by the Ninth Circuit, *Children's Hosp.*, 719 F.2d

16  at 1428, convenience is not a factor to be considered.  *See also United States v. Coopers &*

17  *Lybrand*, 550 F.2d 615, 621 (10th Cir. 1977) ("The term 'relevant' connotes and

18  encompasses more than 'convenience'").

19              2.       The Subpoena is Overbroad.

20          Moreover, the subpoena is overbroad in four ways.  First, the subpoena is onerous

21  and cumbersome in that it seeks information on seventeen categories of information – far

22  broader than the issues in the charge of discrimination.   *See, e.g., EEOC v. United Air*

23  *Lines, Inc.*, 287 F.3d 643, 655 (7th Cir. 2002) (information in subpoena must relate to

24  allegations in charge).    Indeed, the charges of discrimination relate to (1) race;

25  (2) promotions; (3) testing; (4) discipline; and (5) pay.   Thus, requests for information

26  outside these categories are overbroad.

1    For instance, "applications" have no relevance to the allegations in the charges.[5]

2    The EEOC subpoena is not reasonably related to the charges at all.  Indeed, the EEOC's

3    use of the catchall phrase "*and so forth*" suggests that the EEOC has not thoughtfully

4    addressed the information that it needs.  *See, e.g.*, *Manpower, Inc. v. EEOC*, 346 F. Supp.

5    126, 128-29 (E.D. Wis. 1972) (declining to enforce EEOC's broad catchall demand for

6    "any and all like or related records....").

7        Second, the subpoena is overbroad as to the requested class information.  When

8    there is an individual charge, a district court should decline a company-wide subpoena if

9    the EEOC has not offered evidence of the relevancy of company-wide data.  *See EEOC v.*

10   *Packard Elec. Div.*, *General Motors Corp.*, 569 F.2d 315, 318 (5th Cir. 1978).  The EEOC

11   relies on *EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110 (4th Cir.

12   1997) for the proposition that FedEx must provide information about its computer files.

13   *Lockheed*, however, is inapposite.   Unlike this case which involves charges of

14   discrimination by a single charging party (Merritt), *Lockheed* involved "more than twenty

15   former employees of Lockheed" who contacted the EEOC.  *Id.* at 111.  Here, Merritt's

16   charge is brought on behalf of employees in the Western Region.  The class action in

17   California coincides with the scope of Merritt's charge.

18       Third, the subpoena is overbroad as to temporal scope.  The EEOC concedes that it

19   does not have jurisdiction over charges that are untimely.  (*See* Memorandum at 11)  In a

20   deferral jurisdiction such as Arizona, a plaintiff must file a charge of discrimination with

21   the EEOC no more than 300 days from the date on which the last alleged discriminatory

22   act occurred.  *See* 42 U.S.C. § 12117(a) (incorporating Title VII's requirement found in 42

23   U.S.C. § 2000e-5(e)(1) that charges be filed within 300 days in deferral jurisdictions).

24   Merritt submitted his charge of discrimination on December 2, 2004.   In that charge, he

25   _____

26   [5] It is further unclear how other categories are relevant to the Charges.  Although the
EEOC requests information on items such as hiring, job analyses, evaluations, demotions,
training, terminations, the Charges do not contain allegations about any of these actions.

1  complains of failing the February 23, 2003 basic skills test – one year and nine months

2  earlier.  On its face, the charge alleges conduct that occurred more than 300 days before it

3  was filed.  Where a charge shows on its face that it is untimely, the EEOC may not invoke

4  its subpoena powers.  *See, e.g.*, *EEOC v. Ocean City Police Dep't*, 820 F.2d 1378, 1380

5  (4th Cir. 1987) ("a charge which shows on its face that it is untimely is also an invalid

6  charge incapable of invoking EEOC's investigatory powers"), *vacated on other grounds*,

7  486 U.S. 1019 (1988).[6]

8      Finally, the broad geographic nature of the request is not warranted without any

9  evidence of other discrimination.  *See, e.g.*, *Joslin Dry Goods Co. v. EEOC*, 483 F.2d 178,

10  184 (10th Cir. 1973) (it was not shown that there were any hiring or firing practices and

11  procedures applicable to all other stores, limiting EEOC discovery to one store).  *See also*

12  *Packard Elec.*, 569 F.2d at 318.  As referenced above, Merritt's charge and the class

13  action lawsuit are co-extensive.  As there is no showing or allegation of discrimination

14  beyond that already covered in the class action, there is no basis for obtaining additional

15  information.  *See, e.g.*, *Joslin*, 483 F.2d at 184.

16                          **<u>REQUESTED RELIEF</u>**

17      FedEx respectfully requests that the Court issue an order denying the EEOC's

18  request to enforce its subpoena.  Upon the issuance of the right to sue notice and Merritt's

19  subsequent lawsuit, the EEOC no longer had authority to issue the subpoena to FedEx.

20  / / /

21  / / /

22  / / /

23

24

25

26  _____
[6] Because FedEx has more than 100,000 employees, a response to the temporal scope of
the EEOC's subpoena would be unduly burdensome.

DATED this 24th day of July, 2006.

                              FENNEMORE CRAIG, P.C.


                            By  s/ *Ronald Stolkin*
                               Ronald Stolkin
                               Alec Hillbo
                               Attorneys for Respondent
                               Federal Express Corporation

## CERTIFICATE OF SERVICE

      I hereby certify that on July 24, 2006, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

      I hereby certify that on July 24, 2006, I served the attached document by facsimile and electronic mail on the following:

Mary Jo O'Neill
Sally C. Shanley
Sandra J. Padegimas
Katherine Kruse
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
3300 North Central Avenue, Suite 690
Phoenix, Arizona  85012-2504


   s/ *Debra Perkins*


1804294